# BOURN *v.* HILL.

---

PATENTS; INTERFERENCE; CONCURRENT DECISIONS OF PATENT-OFFICE TRIBUNALS; BURDEN OF PROOF; CONSTRUCTION OF COUNTS IN INTERFERENCE; REDUCTION TO PRACTICE.

1. Where the Patent-Office tribunals have agreed in their conclusions in an interference case, an appellant in this court must make out a very clear

case of error in order to secure a reversal (following *Hisey* v. *Peters*, 6 App. D. C. 68; *Esty* v. *Newton*, 14 App. D. C. 50; *Howard* v. *Hey*, 18 App. D. C. 142; *Ocumpaugh* v. *Norton*, 25 App. D. C. 90). The fact that these tribunals have reached their conclusions by different paths does not detract from the weight to be given to their decisions.

2. A junior applicant in interference proceedings, who has filed his application with knowledge of the issue of a patent to the senior party, has a heavy burden to sustain in order to prove his case. (Following *Nielson* v. *Bradshaw*, 16 App. D. C. 92; *Kelly* v. *Fynn*, 16 App. D. C. 573.)

3. A junior applicant in interference proceedings may establish his case by showing a reduction to practice prior to the filing of the application by his rival, or by a conception and disclosure anterior thereto, followed by due diligence in his efforts to perfect his invention prior to and at the time when his rival entered the field.

4. Where the claims of the patent of the senior party to an interference are bodily incorporated into the junior party's application after the issue of the patent, for the purpose of provoking the interference, the counts of the issue thus formed are to be construed in the light of the specifications of the senior party's patent. (Following *Cherney* v. *Clauss*, 25 App. D. C. 15.)

5. A reduction to practice is not sufficiently shown by proof of various experiments in search of a particular process, and an approximation to that process. (Following *Appert* v. *Schmertz*, 13 App. D. C. 117.)

No. 299.   Patent Appeals.   Submitted March 13, 1906.   Decided April 3, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.

*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Charles E. Foster* for the appellant.

*Mr. William A. Macleod* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

All three of the tribunals of the Patent Office have agreed, and without a dissenting voice, in awarding priority of inven-

tion to William G. Hill, Jr., and from the final decision—that of the Commissioner of Patents—this appeal is taken. There are no questions of law involved in the appeal, and the assignments of error are predicated upon the alleged failure of the Commission to rule correctly upon the sufficiency of the evidence to prove or disprove claimed and necessary facts. The errors are specifically set forth, but they are summed up in the last alleged error,—that the decision appealed from is against the weight of evidence.

Where three separate and distinct tribunals, consisting of five experienced men familiar with considering and weighing evidence in proceedings of this nature, agree in their conclusions, this court has repeatedly held that an appellant, in order to secure a seversal, must make out a very clear case of error. *Hisey* v. *Peters,* 6 App. D. C. 68; *Esty* v. *Newton,* 14 App. D. C. 50; *Howard* v. *Hey,* 18 App. D. C. 142; *Ocumpaugh* v. *Norton,* 25 App. D. C. 90.

That these tribunals have reached their conclusions by different paths does not detract from the weight to be given to their decisions. The twelve men in a jury box do not look at all of the items of proof adduced from the same view point, but their unanimous concurrence in their conclusion is ordinarily very persuasive that the result reached is a correct one.

It further appears that Hill, the appellee, is not only the senior party, but that the interference is between his patents and an application of Augustus O. Bourn, the appellant, filed after he had knowledge of the issue of the patents. This fact adds heavily to the burden under which the appellant labors. *Kelly* v. *Fynn,* 16 App. D. C. 573; *Nielson* v. *Bradshaw,* 16 App. D. C. 92.

The record is a voluminous one, consisting as it does of nearly 700 printed pages, but it is unnecessary to refer to Hill's testimony in view of the conclusion reached by us.

Hill filed his original application January 9, 1900. On March 5th of the same year that application was divided and a second one filed. Patents based upon these applications issued November 6, 1900. It is therefore incumbent upon Bourn

to establish his case beyond a reasonable doubt, and to prove invention prior to January 9, 1900. This he may show by a reduction of the invention in controversy to practice prior to that date or by a conception and disclosure anterior thereto, followed by due diligence in his efforts to perfect his invention prior to and at the time when his rival, Hill, entered the field, which, for the purpose of this proceeding, we take as of January 9, 1900.

Let us see whether or not he has succeeded.

The issue of the interference is in three counts, all of which are for processes which are thus stated:

"1. The process of vulcanizing rubber and allied gums, which consists in surrounding with gas the substance to be vulcanized, heating the gas to a temperature sufficient to vulcanize the substance, and subjecting the gas to pressure irrespective of that which may be due to the expansion of the gas by heat.

"2. The process of vulcanizing rubber and allied gums, which consists in surrounding with air the substance to be vulcanized, heating the air to a temperature sufficient to vulcanize the substance, and subjecting the air to pressure irrespective of that which may be due to the expansion of air by heat.

"3. The herein-described process of vulcanizing rubber and allied gums, which consists in heating the rubber compound in an atmosphere of an inert gas."

That these counts are to be construed in the light of the specifications of the Hill patents is a proposition that has repeatedly been affirmed by this court. They are claims of Hill's patents, and were bodily incorporated into Bourn's application after the issue of Hill's patents and for the purpose of provoking this interference. *Cherney* v. *Clauss,* 25 App. D. C. 15. With his application Bourn filed an affidavit claiming to have completed his invention prior to January 9, 1900, the date of Hill's filing his original application.

The Examiners-in-Chief have, we think, correctly defined the processes of the counts. They say:

The processes of counts 1 and 2 of the issue have the relation of genus and species. In the first count a process is defined in

which is used any gas. In the second count the same process is defined, but the gas used is a specific gas, *i. e.,* air.

In count 3 of the issue the gas is an inert gas; that is to say, a nonoxidizing gas, or any gas which will not injuriously affect the rubber or allied gum to change its constituent character.

Whatever be the gas used, the process as defined by the language of counts 1 and 2 is:

(1) Surrounding with the gas rubber or its allied gums.

(2) Heating the gas to a heat sufficient to vulcanize rubber or its allied gums.

(3) Subjecting the gas to pressure "irrespective of that which may be due to the expansion of the gas by heat."

These counts call for a simultaneous application to the rubber or allied gum of a gas at a vulcanizing heat and at a pressure greater than that due to the expansion of the gas while hot; and that the temperature and the pressure shall be maintained until the rubber or allied gum is vulcanized.

The manner of carrying out the process is described in the Hill patents, and such description shows clearly that the gas is applied to the rubber at the vulcanizing heat and stated pressure at one and the same time, and is continued until vulcanization is complete.

An examination of the proofs adduced by Bourn to determine whether he had completed the invention in controversy prior to January 9, 1900, as set forth in his affidavit before referred to, and in his preliminary statement becomes necessary.

In his preliminary statement Bourn claims to have conceived and disclosed the invention early in 1897, and that in April, 1898, he caused to be constructed an apparatus to be used for carrying on his experiments, and that with such apparatus he practised the invention of all of the counts of the issue during the following month; and, further, that he from time to time vulcanized rubber and allied gums from that time until the filing of his application.

His proofs disclose that what he claims to have done in 1897 amounted to naught. He neither, during that year, con-

ceived nor disclosed to anyone the subject-matter of the inter-
ference. The latter part of April, 1898, he had procured a
vulcanizer, and undoubtedly he used it for experimentation
purposes; but neither his own testimony nor that of his wit-
nesses is sufficiently clear and exact to convince us that at any
time prior to his learning of the issue of the patents to Hill
had he successfully practised the process of the issue. It is
very easy when one has been in possession of an apparatus
capable of carrying out a process, and has experimented with
that apparatus, to convince himself, and those in his employ,
or interested with him in business, that a process, afterward
disclosed in a printed publication, was the one practised by him.
But a careful reading of the testimony fails to convince us
that Bourn had more than scratched the surface. All the cir-
cumstances surrounding the case, and his own conduct, tend to
strengthen our opinion. He was a manufacturer of India rub-
ber boots and shoes, with ample means and facilities for making
improvements in the art at his command; a patentee of im-
provements in the rubber art, and familiar with the art of
vulcanization; and he had full knowledge of the need for some
process that would shorten the time of vulcanization. It seems
impossible to believe that he would have waited months and
years after he had solved the problem without applying for
patent protection. Having learned of the issue of the patents
to Hill, for what he believed was his invention, he says that
very day he wrote his attorneys to investigate the matter, and
prepare an application for patent. The nonproduction of that
letter forces us to the conclusion that even at the time when he
wrote it he was unable to, or did not, apprize his attorneys what
his process was. We do not doubt that he had been flounder-
ing about for more than two years in his attempts to accom-
plish something, nor do we doubt that, after he had the process
described to him, he really believed that he had practised the
process. He may have practised *at* it, but it is not sufficient
that he may have approximated the process. *Appert* v.
*Schmertz,* 13 App. D. C. 117.

The evidence offered, however, is not sufficient to overcome

the doubts arising from his own actions, much less to overcome an issued patent. We think no court would overthrow Hill's patents on evidence such as is presented in this record. The same rule of law applies in both cases. All the testimony relating to the counts of the issue is oral. No written directions given to the workmen as to what they were to do are in evidence. Such exhibits as are produced relate to a machine which could be used in carrying out different processes. There is an absence of clear and convincing testimony sufficient to overcome the many presumptions bearing so heavily upon the appellant. The comments of the Supreme Court in *Barbed Wire Patent* (*Washburn & M. Mfg. Co.* v. *Beat 'Em All Barbed Wire Co.*) 143 U. S. 284, 36 L. ed. 158, 12 Sup. Ct. Rep. 443, 450, are very pertinent to, and strongly appeal to us in, this case.

To review all the testimony would consume more time than we have at our command, and, as the facts would be of no value to any other case, a longer opinion would merely lumber the reports of the court. The three opinions of the Patent Office tribunals give in detail the facts, and no good purpose would be subserved in restating them.

Appellant has not satisfied us, beyond a reasonable doubt, that he had reduced the process of the issue to practice prior to the time when Hill's patents were applied for, or that he had done so even at the time when he filed his application for patent. Our conclusion on this branch of the case makes it unnecessary to refer to the laches of appellant in filing an application for patent. The general principles applicable to that question need not here be discussed.

We have failed to discover any error in the decision of the Commissioner of Patents which would warrant a reversal. His decision is correct and is affirmed.

The clerk of the court will certify our opinion, and the proceedings herein, to the Commissioner of Patents as required by law.                                        *Affirmed.*